Filed 2/5/24  P. v. Quiroz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DANIEL QUIROZ, JR., <br><br>     Defendant and Appellant. | D081316 <br><br><br><br> (Super. Ct. No. SCD289289) |


APPEAL from a judgment of the Superior Court of San Diego County, Kenneth K. So, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Daniel Quiroz, Jr., shot towards a police officer during a routine traffic stop, and an errant bullet struck (but did not injure) a pedestrian.  On appeal, Quiroz asserts that the trial court abused its discretion when it concluded that Quiroz posed a danger to public safety and

therefore declined to dismiss allegations under Penal Code section 1385, subdivision (c)(2)(B), (C) and (D).[1] We conclude that the trial court did not err in declining to dismiss the allegations.

Further, Quiroz contends that the trial court erred in declining to impose a concurrent sentence as to count 4. As we explain, we conclude that the court did not abuse its discretion in imposing the consecutive sentence for counts 1 and 4.

Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, Quiroz was driving near the convention center when San Diego Police Officer Cody Horn initiated a traffic stop. After getting out of his car, Quiroz pulled a semiautomatic handgun from his waistband and shot the gun in the direction of the officer. Quiroz contends that he did not actually intend to shoot the officer, but was instead intending to provoke the officer to shoot him. Officer Horn returned fire. Although neither Officer Horn nor Quiroz was struck by the bullets, a pedestrian in the area, Christopher P., was struck. Fortunately, an eyeglass case in Christopher P.'s back pocket prevented serious injury to him.

In its second amended information, the People charged Quiroz with one count of attempted murder (count 1: §§ 187, subd. (a) and 664); one count of assault on a peace officer with a semiautomatic firearm (count 2: § 245, subd. (d)(2)); and two counts of assault with a semiautomatic firearm (§ 245, subd. (b))—count 3 as to Officer Horn, and count 4 as to Christopher P.) The People alleged further, with respect to count 1, that Quiroz knew or reasonably

---

[1] All further unspecified statutory references are to the Penal Code.

should have known that the victim was a peace officer, and that he acted willfully, deliberately and with premeditation.  As to counts 1 and 2, the People alleged that Quiroz intentionally and personally discharged a semiautomatic handgun during the commission of a felony, within the meaning of section 12022.53, subdivision (c); and as to counts 3 and 4, the People alleged that Quiroz personally used a firearm, within the meaning of section 12022.5(a).

Quiroz was convicted by a jury of all counts.  The jury further found that all allegations were true.

At sentencing, as part of his statement in mitigation, Quiroz submitted a psychological evaluation prepared by Dr. Abraham Loebenstein.  Dr. Loebenstein concluded that Quiroz suffered from a mental health diagnosis of "Unspecified Schizophrenia Spectrum / Other Psychotic Disorder" and severe alcohol use disorder, that he was "at risk for current suicidal ideation and attempts" and that "it is also possible that his psychotic symptoms are substance-induced."  Dr. Loebenstein noted:

> "The events of the instant matter appear to reflect a dangerous combination of psychotic thinking exacerbated by both past and recent substance use.  Daniel was not found to be inherently aggressive, antisocial, or criminal minded.  His potential to improve his life circumstances would greatly increase if he can successfully treat his mental health disorder and substance use concerns."

After hearing argument from both counsel, the court sentenced Quiroz on count 1 to an indeterminate term of fifteen years to life, plus twenty years pursuant to section 12022.53(c) (personal use of a weapon); and on count 4, the court sentenced Quiroz to an indeterminate middle term of six years, plus the section 12022.5(a) allegation of four years, with the counts to run

3

consecutive for a total term of thirty years plus fifteen to life.  Counts 2 and 3 were stayed pursuant to section 654.

Quiroz timely appeals.

## DISCUSSION

A.  *Quiroz did not forfeit his arguments regarding mitigation*

Respondent contends that Quiroz has "forfeited his claim of sentencing error."[2]  Respondent argues that to avoid forfeiture, a defendant must "[object] when the sentence is announced . . . ."  This is news to us.  Respondent cites *People v. Scott* (1994) 9 Cal.4th 331, 353.  But that case does not stand for the proposition cited, i.e., that forfeiture occurs unless defendant "objects when the sentence is announced."  The Court in *Scott* stated:

> "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing.  Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention.  As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them."

(*Ibid.*)

Here, Quiroz's counsel did not fail to raise a "routine defect" in the court's ruling.  Quiroz's counsel filed a sentencing brief that included a report from Dr. Loebenstein, and he specifically referenced Quiroz's mental health issues and the reasons supporting dismissal of the allegations at the

---

[2]    On appeal, Quiroz raises several claims of error, all based upon arguments set forth in Quiroz's sentencing brief and/or discussed at the sentencing hearing.  Respondent does not specify which claim or claims it contends are forfeited.

4

sentencing hearing. In no way can it be said that Quiroz's arguments were "raised for the first time on appeal." To the extent that Respondent is arguing that forfeiture depends on timing, i.e., that a claim is forfeited unless it is stated *after* "the sentence is announced," we reject that contention. We observe that it is generally not appropriate for counsel to interrupt the court while the court is ruling; and once the court has ruled, unless the court has made a technical, correctable error, it cannot be the case that counsel is obliged to reprise his argument in order to preserve the issue for appeal.

B. *The trial court did not err in declining to strike the allegation under 12022.53(c)*

On appeal, Quiroz contends that the trial court abused its discretion in declining to strike the sentencing enhancement based upon the jury's true finding that Quiroz had used a firearm during a commission of a felony under section 12022.53(c), because it failed to give great weight to the statutory mitigating circumstances; it did not rely on any valid aggravating factor; and its finding that Quiroz presented a risk to public safety was refuted by the record. We review the sentence for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 ["abuse of discretion is the proper standard of review for the trial court's determination that dismissal of [defendant's] firearm enhancement would endanger public safety"].)

Section 1385 has long permitted trial courts to dismiss sentence enhancements if doing so is in the furtherance of justice. (See former § 1385, amended by Stats. 1986, ch. 85, § 2, eff. May 6, 1986.) In 2021, the Legislature passed Senate Bill No. 81 (2021-2022 Reg. Sess.), amending section 1385 to not only grant trial courts the authority, but to also impose a duty upon them to strike or dismiss certain sentence enhancements when it is in the interest of justice to do so. The amended statute sets forth nine mitigating circumstances that the trial court must consider when making

5

that decision.  (Stats. 2021, ch. 721, § 1; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16; *People v. Walker* (2023) 86 Cal.App.5th 386, 395–398, review granted March 22, 2023, S278309.)  As relevant here, section 1385, subdivision (c) now states:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The mitigating circumstances raised by Quiroz in section 1385, subdivision (c)(2)(B)–(D) are:

> "(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

> "(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed.

> "(D) The current offense is connected to mental illness."

First, Quiroz argues that the trial court made no indication that it gave "great weight" to the mitigating factor regarding connection to mental illness.  As an initial matter, we note that the absence of the court's "indication" is not helpful to this analysis.  "[I]n light of the presumption on a silent record that

6

the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) Moreover, once the trial court concludes dismissal would not be in the furtherance of justice and/or would endanger public safety, section 1385 does not require dismissal of a sentencing enhancement, and the court does not need to further consider factors in mitigation.

In *Mendoza, supra,* 88 Cal.App.5th 287, the trial court found that dismissal of the enhancement under subdivision (c) of section 12022.53 would endanger public safety, based upon several factors. Accordingly, it declined to dismiss the related firearm enhancement, reasoning that " 'if dismissing the enhancement would endanger the public, the Court does not even engage in evaluating the mitigating factors.' " (*Mendoza,* at p. 293.) In affirming on de novo review of section 1385, the *Mendoza* court agreed and held that "consideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety." (*Mendoza,* at p. 297.)

So too here. The trial court found that Quiroz had endangered public safety when, without provocation, he pulled his gun and began shooting; that he could have easily killed someone; and that upon his arrest, he asked if the shots toward the officer were "good shots." The court acknowledged Quiroz's "issues" and his family's ongoing concern about them, but concluded that "the evidence demonstrates [] that you are a danger to the public." Thus, the trial court was not required to further analyze section 1385's mitigating factors. (*Mendoza, supra,* 88 Cal.App.5th at p. 297.)

7

Second, Quiroz contends that "none of the several factors relied on by the court to find that dismissal of the enhancement would endanger public safety was valid." Specifically, Quiroz argues that the use of a firearm is an element of the offense and therefore could not be relied upon by the court for finding a danger to public safety, based upon California Rules of Court, rule 4.420(h) ("a fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"). However, as Respondent points out, "[t]hat rule deals with selection of a term of imprisonment, not whether an enhancement should be struck. The trial court did not rely on the personal-discharge enhancement to impose an upper term of imprisonment." Quiroz further asserts that "the Legislature did not intend for courts to consider a defendant's use of a firearm to be an aggravating factor that would preclude the striking of an enhancement for use of a firearm under section 1385," but we are aware of no authority for the proposition that the allegation of use of a firearm could not be considered by the court for an offense that involved the use of a firearm. Quiroz also challenges the trial court's statement that the victims were "vulnerable," noting that one victim was a police officer and one was simply a pedestrian. Here, however, the trial court's reference to vulnerability of those affected by Quiroz's unprovoked shooting (see, e.g., *People v. Eades* (1979) 95 Cal.App.3d 688, 690) was simply part of the court's analysis of all the facts leading to its conclusion that Quiroz posed a danger to the public.

Finally, Quiroz contends that none of the factors relied on by the court in concluding that dismissal of the enhancement would endanger public safety was valid because they were refuted by the record. Specifically, Quiroz points out that Dr. Loebenstein found Quiroz is not "inherently aggressive, antisocial, or criminal minded," and that he is not "inherently dangerous or a

8

behavioral risk to the community provided that he strictly adheres [to recommendations by mental health providers] and commits himself to remaining sober." But Dr. Loebenstein also concluded that "[t]he events of the instant matter appear to reflect a dangerous combination of psychotic thinking exacerbated by both past and recent substance use." Further, nothing in the record suggested that Quiroz had taken any steps to address his psychiatric or substance abuse issues. Thus, contrary to Quiroz's argument, the record does not in fact refute the trial court's finding as to public safety.

Because we conclude that the court did not abuse its discretion in declining to strike the enhancement, we do not reach the constitutional issue.

C.      *The Court did not err in imposing a consecutive sentence as to count 4*

Quiroz argues that the trial court erred when it declined to order that Quiroz's sentence on count 4 be concurrent to the sentence on count 1, as requested by his counsel at sentencing. Quiroz argues that the circumstances involving count 1 (attempted murder) and count 4 (assault on Christopher P. with a semiautomatic firearm) occurred as part of the same course of action, and that Christopher P. did not suffer physical harm, the prosecution failed to allege aggravating factors, and Quiroz's mitigating circumstances justify a concurrent sentence.

We review a court's decision to impose a consecutive sentence for abuse of discretion. (*People v. Clancey* (2013) 56 Cal.4th 562, 579 [court has broad discretion to decide "whether to run the prison terms on multiple offenses concurrently or consecutively"].)

1.      Appellant did not forfeit this issue

Although Quiroz's counsel expressly and specifically argued for concurrent sentencing at the sentencing hearing, Respondent contends that

9

Quiroz forfeited this issue ("[s]ince appellant did not object when the trial court imposed consecutive sentences on counts 1 and 4, he forfeited his claim"). Respondent further contends that the request for a concurrent sentence *beforehand* is insufficient to preserve the issue. To the extent that we understand what is meant by "beforehand," we disagree. Although it is certainly true that defense counsel should timely and specifically bring objections to the attention of the trial court so that the court has an opportunity to correct any error, (see *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1101), Respondent does not explain what more Quiroz's attorney should have done, having presented his argument for a concurrent sentence to the court. As noted in the preceding section, we cannot endorse a rule requiring counsel to interrupt the court while the court is ruling, nor to reprise his argument after the ruling in order to preserve the issue for appeal.

2.      The court did not abuse its discretion in imposing a consecutive sentence

California Rules of Court, rule 4.425 gives a non-exclusive list of factors that may be considered by the court in deciding whether to impose a consecutive sentence, including circumstances of the crime, and sets forth certain exclusions for consideration not relevant here. At sentencing, the court referenced the danger to the public posed by Quiroz's shooting; the threat to Officer Horn; and the unprovoked shooting of Christopher P., and concluded that Quiroz was a danger to the public. The court further noted that Quiroz was armed and "easily could have killed someone," and the victims were vulnerable: the officer was simply conducting a traffic stop, and Christopher P. was merely walking down the street.

Although Quiroz contends that the two crimes were dependent on each other, had a single objective, and were the product of a single period of aberrant behavior, it was not error for the court to sentence the counts

10

consecutively.  (See *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1061 ["the naming of separate victims in separate counts is a circumstance on which a trial court may properly rely to impose consecutive sentences"].)

On this record, it cannot be said that the trial court abused its discretion in ordering that the sentences on count 1 and count 4 be served consecutively.

DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

11