[No. C000132. Third Dist. Jan. 31, 1989.]

CYNTHIA ANN CASEY, Petitioner, v.
THE SUPERIOR COURT OF CALAVERAS COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sam Behar, Public Defender, and Clark Head, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Edmond D. McMurray and William J. Portanova, Deputy Attorneys General, for Real Party in Interest.

---

**OPINION**

**CARR, J.**—Petitioner Cynthia Ann Casey seeks prohibition restraining the Superior Court of Calaveras County from proceeding to trial on action No. 2311, People v. Cynthia Ann Casey. She contends such prosecution is barred by Penal Code section 1387[1] by reason of two prior dismissals on the same cause of action in the San Joaquin Municipal Court.

Section 1387, as relevant herein, provides: "An order terminating an action pursuant to this chapter . . . is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter. . . ."

The essential issue presented is whether a dismissal of a complaint in one county for lack of jurisdiction because the crime charged occurred in another county is a dismissal within the parameters of section 1387.

### FACTUAL AND PROCEDURAL BACKGROUND

As disclosed by a declaration in support of an arrest warrant filed in San Joaquin County, on April 6, 1984, an undercover agent met several individuals at the intersection of Highway 26 and Hogan Dam Road to buy methamphetamine. Petitioner was alleged to be one of the drug sellers. She and two other people were arrested and charged in San Joaquin County with the sale of methamphetamine (Health & Saf. Code. § 11379) and conspiracy to sell methamphetamine (§ 182). The overt acts in furtherance of the conspiracy were alleged to have occurred in San Joaquin and Calaveras Counties. The first overt act was a meeting in Stockton on April 4, 1984, between petitioner's two codefendants and an undercover agent. The second overt act alleged one of these codefendants and petitioner met the same agent "on Highway 26 at Hogan Dam Road in Calaveras County on 4/6/84."

Petitioner pled not guilty. A preliminary examination was held July 16, 1984, but the felony docket sheet fails to indicate on what counts petitioner

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

was held to answer. A transcript of that proceeding is not included in the record. Six weeks later, on July 30, 1984, the court ordered the case dismissed. Again, no reporter's transcript of this proceeding has been provided. The only information concerning the dismissal is contained in the preprinted felony docket sheet. That document covers every part of the proceedings from the presence or nonpresence of defendant at arraignment to waiver by defendant of time for sentence, each statement preceeded by a little box to be checked or not depending on whether some affirmative action was or was not taken. It contains a section relating to dismissals. This section is composed of the following recitals: "[ ] Upon motion DDA, Court ordered case/count(s) _____ DISMISSED [ ] in the interest of justice [ ] insufficient evidence [ ] in view of plea to _____ [ ] other: _____ ." The boxes checked indicated that on motion of the deputy district attorney, the case was dismissed "[x] in the interest of justice" and "[x] other: corpus delecti [*sic*] problem." Presumably the court felt any dismissal other than for insufficient evidence or plea to another offense was a dismissal in the interest of justice and the "other" was simply a convenient line to put the reasons required by section 1385.[2] Parenthetically we observe that a corpus delicti problem, facially at least, would appear to be a problem of the sufficiency of the evidence, either as to the commission of the crime or defendant's involvement.

On August 2, 1984, a second complaint was filed in San Joaquin County Municipal Court, charging petitioner with the same sale of methamphetamine on April 6, 1984. No conspiracy charges were alleged, nor did the complaint specify where this sale took place, other than to state the offense occurred in San Joaquin County. Petitioner again pled not guilty.[3]

A preliminary hearing was scheduled for November 26, 1984. On our own motion, this court augmented the record to include the reporter's transcript from that proceeding. When the case was called, the following colloquy occurred:

"[DEPUTY DISTRICT ATTORNEY]: Your Honor, in this matter, after consultation with Special Agent Thompson and learning that the location of Highway 12 and Hogan Dam Road is not within this county, it appears that

---

[2] Section 1385 provides: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading." Petitioner could not demur to the complaint because the error in question did not appear on its face.

[3] The two other individuals charged with petitioner in the first complaint were not named in this second complaint.

there's a failure to—there's a defect in the complaint and we therefore move to dismiss for lack of jurisdiction.

"[THE COURT]: The matter will be dismissed for lack of jurisdiction.

"[DEFENSE COUNSEL]: Thank you, Your Honor."

The preprinted docket sheet reflects this decision with checks in the boxes indicating a dismissal in the interest of justice, with a second check in the box marked "other" with the comment "lack of jurisdiction—not proper county."

A complaint charging petitioner with possession and possession for sale of methamphetamine had been filed in Cala- veras County the preceding month, October 1984. The offenses were alleged to have occurred in Cala- veras County in August 1984 and were unrelated to the San Joaquin sale charge. After the second San Joaquin County complaint was dismissed, the Calaveras complaint was amended to add two counts, a misdemeanor viola- tion of Business and Professions Code section 4143 (illegal possession of a hypodermic needle and syringe) and the April 6, 1984, sale of methamphet- amine, the same transaction which formed the basis for the San Joaquin County complaints.

After a preliminary examination, the Calaveras Justice Court held peti- tioner to answer on only the last two charges which had been added by amendment and an information issued charging petitioner with the sale of methamphetamine on April 6, 1984 (count I) and a violation of Business and Professions Code section 4143 in August 1984 (count II). Petitioner pled not guilty and moved to set aside the information as to count I on the ground it was barred by the two previous dismissals of the same charge in San Joaquin County. The court denied the motion, finding inter alia that the earlier dismissals were not in the interest of justice within the meaning of section 1385. Petitioner sought a writ of prohibition and we issued an alternative writ.

DISCUSSION

Petitioner contends she was twice charged with the April 6, 1984, sale of methamphetamine and that on both occasions the San Joaquin County Municipal Court dismissed the charges "in the furtherance of jus- tice," i.e., pursuant to section 1385. Ergo, she asserts, these dismissals are within the scope of section 1387 and the People are precluded from prose- cuting her for this crime in Calaveras County. We reject petitioner's claim

and conclude a dismissal for lack of jurisdiction is not a dismissal in the interest of justice within the meaning of section 1385.

As previously noted, section 1387 provides in relevant part: "An order terminating an action pursuant to this chapter . . . is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter. . . ." This "two-dismissal rule" was enacted to prevent forum shopping and prosecutional harassment of defendants with successive prosecutions. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352]; *People* v. *Cossio* (1977) 76 Cal.App.3d 369, 371-372 [142 Cal.Rptr. 781].) It does not distinguish between types of dismissals: all dismissals made pursuant to specified code sections are included, whether the dismissal was on the merits or for procedural deficiencies. (*Lee* v. *Superior Court* (1983) 142 Cal.App.3d 637, 640 [191 Cal.Rptr. 361].)[4]

We agree with petitioner that the same offense is at issue in each prosecution. This is not a situation in which only the "essence" of the charged offense is the same (see, e.g., *Dunn* v. *Superior Court* (1984) 159 Cal.App.3d 1110, 1118 [206 Cal.Rptr. 242]; *Wallace* v. *Municipal Court* (1983) 140 Cal.App.3d 100, 106-107 [189 Cal.Rptr. 886]). Here the identical transaction forms the basis for each case: the alleged sale of methamphetamines on April 6, 1984, at the intersection of Highway 26 and Hogan Dam Road. The Calaveras County District Attorney so stipulated.[5]

We turn to the question of whether the two previous dismissals by the San Joaquin County Municipal Court were dismissals terminating an action "pursuant to this chapter," as required by section 1387. "This chapter" refers to chapter 8 of title 10 of part 2 of the Penal Code, entitled "Dismiss-

---

[4] The two-dismissal rule does not apply if substantial new evidence is discovered subsequent to the dismissal or the termination was the result of intimidation of a material witness. (§ 1387.) Further exceptions are established by the statute. In 1984, the time relevant to petitioner, section 1387 provided: "However, if the previous termination was pursuant to Section 859b, 861, 871, or 995, the subsequent order terminating an action is not a bar to prosecution if either: [¶] (a) Good cause is shown why the preliminary examination was not held within 60 days from the date of arraignment or plea. [¶] (b) The motion pursuant to Section 995 was granted because of (1) present insanity of the defendant or (2) a lack of counsel after the defendant elected to represent himself or herself rather than being represented by appointed counsel." (Stats. 1982, ch. 637, § 1, pp. 2646-2647.) None of these exceptions is applicable to the present case.

[5] The People urge the offense is not the "same offense" because the San Joaquin complaint alleged the transaction occurred in San Joaquin County while the Calaveras information charged the sale occurred in Calaveras County. However, the parties have acknowledged the same facts form the basis for each charge and that the place in question is located in Calaveras County. Moreover, venue is not part of the corpus delicti of the crime. (*People* v. *Garcia* (1970) 4 Cal.App.3d 904, 911 [84 Cal.Rptr. 624].)

al of the Action for Want of Prosecution or Otherwise." The specific statute at issue here is section 1385 which permits a court to dismiss an action "in furtherance of justice." (See fn. 2, *ante*.)

The record yields no explanation of the court's first dismissal of the complaint for corpus delicti problems, nor do the parties consider whether such a dismissal is one in the furtherance of justice. For purposes of this appeal, we assume it is.

The docket sheet indicates the second dismissal was made in the interest of justice, specifically noting the court lacked jurisdiction because the crime occurred in another county. Counsel have cited us to no case nor has our independent research uncovered any case considering the issue before us, whether a dismissal for lack of venue jurisdiction is a dismissal in furtherance of justice.

As we explain, we do not view a dismissal for lack of territorial jurisdiction as a dismissal in the furtherance of justice within the meaning of section 1385, notwithstanding the clerk's notation labelling it as such. ■ We observe initially that in the absence of contrary statutory provisions, jurisdiction to prosecute a criminal charge lies in the county in which the criminal act was committed. (§ 777; *Jackson* v. *Superior Court* (1970) 13 Cal.App.3d 440, 443-444 [91 Cal.Rptr. 565, 46 A.L.R.3d 290].)[6]

■ The trial court has broad discretion to dismiss an action under section 1385, but this discretion is not absolute. (*People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193].) The court must weigh the constitutional rights of the defendant and the interests of society in determining whether dismissal is appropriate. (*Ibid.*) When a dismissal occurs after trial, the court must consider "the evidence indicative of guilt or innocence, the nature of the crime involved, the fact that the defendant

---

[6]There are a number of situations in which concurrent or dual jurisdiction may exist for the prosecution of criminal offenses. For example, section 781 provides for dual jurisdiction when an offense is committed in part in one jurisdiction and in part in another (see *People* v. *Megladdery* (1940) 40 Cal.App.2d 748, 774-780 [106 P.2d 84]); section 782 provides dual jurisdiction when an offense is committed within 500 yards of a jurisdictional boundary; and section 184, relating to conspiracy, provides trial may be held in any county where any overt act was done.

Both the People and petitioner have assumed the usual jurisdiction provisions of section 777 apply here; neither party has suggested San Joaquin and Calaveras Counties might have had concurrent jurisdiction over the charged offense. We shall operate on the same assumption, namely, once conspiracy charges against petitioner were dropped, Calaveras County was the only place in which trial could properly be held. We therefore offer no opinion as to possible theories under which dual jurisdiction might have been asserted, nor do we resolve the potential problems created if San Joaquin County dismissed the complaint against petitioner for lack of jurisdiction when it in fact had jurisdiction to hear the matter.

has or has not been incarcerated in prison awaiting trial and the length of such incarceration, the possible harassment and burdens imposed upon the defendant by a retrial, and the likelihood, if any, that additional evidence will be presented upon a retrial." (*People* v. *Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 505 [72 Cal.Rptr. 330, 446 P.2d 138].) Many of these factors have been held to be equally applicable to dismissals before trial (*People* v. *Curtiss* (1970) 4 Cal.App.3d 123, 126 [84 Cal.Rptr. 106]) but have little, if any, relevance to a dismissal made for lack of jurisdiction.

In *Orin, supra,* 13 Cal.3d 937, the court enumerated situations in which pretrial dismissals are appropriate in the furtherance of justice. Such dismissals are proper, the court stated: whether "designed to enable the prosecution 'to obtain further witnesses, to add additional defendants, to plead new facts, or to plead new offenses . . . .' " (13 Cal.3d at p. 946.) Other reasons have been held to be improper, including sympathy of the court (*People* v. *Sanders* (1983) 145 Cal.App.3d 218, 226 [193 Cal.Rptr. 331]), judicial convenience (*People* v. *Johnson* (1984) 157 Cal.App.3d Supp. 1, 8 [204 Cal.Rptr. 563]) or court congestion (*People* v. *Andrade* (1978) 86 Cal.App.3d 963, 976 [150 Cal.Rptr. 662]; *People* v. *Mack* (1975) 52 Cal.App.3d 680, 684 [125 Cal.Rptr. 188]).

■■■ A dismissal for lack of territorial jurisdiction is qualitatively different from those situations in which dismissals in the furtherance of justice have been approved. In the former situation, the court is not empowered to hear the case; in the latter it *chooses* to dismiss the case because other factors outweigh its authority to act.

This conclusion finds further support in the fact a number of methods exist to challenge a court's power to hear a case, all of which are outside the scope of section 1387. Should a court act in excess of its territorial jurisdiction, a defendant may seek relief through extraordinary measures such as habeas corpus to prevent a court from proceeding. (§ 1487; *In re Huber* (1930) 103 Cal.App. 315 [284 P. 509].) Similarly, the lack of territorial jurisdiction may be raised in a motion for new trial or on appeal. (See, e.g., *People* v. *Gerundo* (1952) 112 Cal.App.2d 863, 865-869 [247 P.2d 398]; see generally Witkin, Cal. Criminal Procedure (1963) §§ 64-65, pp. 62-64.)

More importantly, section 1385 explicitly limits the types of dismissals which can be considered to have been made in the furtherance of justice by providing: "No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading." Lack of jurisdiction is a basis for demurrer. (§ 1004.) As this defect cannot be cured by amendment, an action in excess of jurisdiction must be dismissed pursuant to section 1008 after the demurrer is sustained. Significantly, dismissals made in

accordance with this section are not included within the two-dismissal rule of section 1387.

Petitioner asserts she could not have demurred to the San Joaquin County complaint because the defect—lack of jurisdiction—did not appear on the face of the complaint. Petitioner is technically correct. However, once the prosecutor informed the court the alleged offense occurred in Calaveras and not San Joaquin County, the complaint was essentially "amended," and the defect became apparent.

Moreover, even if petitioner was not able to actually demur to the complaint, it remains that section 1385 views grounds for demurrer, such as lack of jurisdiction, as something other than a dismissal in the furtherance of justice. In short, a dismissal for lack of territorial jurisdiction is precisely that; it is not a dismissal in the furtherance of justice.

This determination finds support in the peculiar facts of this case. First, we note neither the parties nor the court referred to this dismissal as one made in furtherance of justice; rather, the case was simply dismissed "for lack of jurisdiction." Only through the clerk's checking of a box on the felony docket sheet do the magic words "in the interest of justice" appear. We believe the statements of the prosecutor and court are entitled to greater credence than the notations of the court clerk. (See *People* v. *Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152].)

Secondly, the instant case does not disclose either harassment of petitioner or prosecutorial forum-shopping, the evils section 1387 was designed to prevent. This is not a situation in which a prosecutor has refiled charges with the hope that a different magistrate will view a case more favorably (see *People* v. *Peters* (1978) 21 Cal.3d 749, 759 [147 Cal.Rptr. 646, 581 P.2d 651], dis. opn. by Mosk, J). While we do not condone the sloppy filing of the complaint in this case, we also do not equate this carelessness with harassment or forum shopping.[7]

Petitioner asserts denying her the relief sought may result in further prosecution of her codefendants, who pled guilty and have presumably been sentenced. Her concern is unwarranted. ■ Unlike personal or subject matter jurisdiction, territorial jurisdiction is not fundamental and may be conferred upon a court through a plea of guilty which admits all charged

---

[7] We note in passing that errors of this type may be eliminated if the complaint and arrest warrant are transferred to the proper county pursuant to section 827.

Given our conclusion that the court's dismissal for lack of jurisdiction was not a dismissal within the meanings of sections 1385 and 1387, we have no occasion to consider the People's arguments regarding the independence of each county's prosecutors.

allegations, including jurisdiction. (*People* v. *Tabucchi* (1976) 64 Cal.App.3d 133, 141 [134 Cal.Rptr. 245].) No further prosecution for these acts could be instituted against petitioner's codefendants.

### DISPOSITION

■■■ Charges against petitioner have not been twice dismissed within the meaning of section 1387. The petition for writ of prohibition is denied. The alternative writ, having served its purpose, is discharged.

Evans, Acting P. J., concurred.

**GILBERT, J.**\*—I respectfully dissent. I cannot join the majority's conclusion that a dismissal on motion of the prosecutor premised on the assertion that the criminal action has been commenced in the wrong county is not a dismissal "in furtherance of justice" within the meaning of Penal Code section 1385. (All further statutory references are to the Penal Code.)

The question what dismissals are properly within the purview of section 1385 must begin with the language of the statute itself. (*Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476, 480 [191 Cal.Rptr. 893].) Nothing in the words of the statute suggests the exclusion of dismissals on grounds of improper venue. On the other hand, the explicit exclusion of other specific grounds, such as those which are grounds for demurrer and exclusion of the power to strike enhancements under section 667, demonstrates that the Legislature did not intend to exclude other grounds for dismissal from section 1385. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) To the extent that the plain, nonexclusive language of section 1385 needs clarification, its meaning may be ascertained with reference to the entire statutory scheme of which it is a part. (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) Section 1385 appears in chapter 8 of title 10 of the Penal Code entitled "Dismissal of the Action for Want of Prosecution or Otherwise." Other sections of chapter 8 require dismissal of criminal cases for failure of timely prosecution. (§§ 1381, 1381.5, 1382.) Section 1387 deals with the effect of dismissals "pursuant to this chapter [chapter 8]" and other specified sections. In enacting the two-dismissal bar of section 1387, the Legislature has also specifically listed circumstances and dismissals, including those under section 1385 and others in and out of chapter 8, where dismissal is not a bar. Again, dismissals for lack of territorial jurisdiction are not excepted. The language of sections 1385 and 1387, when read together, lead to the conclusion that dismissals for lack of territorial juris-

---

\* Assigned by the Chairperson of the Judicial Council.

diction may properly be ordered under 1385 and count toward the bar of section 1387.

The majority attempts to distinguish dismissals for lack of territorial jurisdiction from dismissals appropriate under section 1385 on the theory that, "in the former situation, the court is not empowered to hear the case; in the latter it *chooses* to dismiss the case because other factors outweigh its authority to act." (Maj. opn., *ante*, p. 844, italics in original.) This distinction does not withstand analysis.

The majority's conclusion appears to rest on two erroneous assumptions, one general and one peculiar to the instant case. First, as discussed below, the majority erroneously assumes that dismissals on grounds of venue do not generally involve a weighing of interest or choice. Secondly, they assume that this case presented no choice of venue.[1] (Maj. opn., *ante,* p. 843, fn. 6.)

There are numerous instances where concurrent or dual jurisdiction exists for the prosecution of criminal offenses. The potential existence of more than one county of appropriate venue is reason to conclude that dismissal for lack of appropriate venue is properly made by a prosecutor pursuant to section 1385. The apparent facts presented here illustrate the point. The first San Joaquin County complaint charged petitioner with conspiracy to sell methamphetamine. This complaint alleged overt acts in both San Joaquin and Calaveras Counties. Notwithstanding the dismissal of the complaint, such facts would have properly allowed prosecution in either county under section 184, as overt acts occurred in each, and under section 782, as acts of preparation occurred in both counties. (*People v. Tabucchi, supra,* 64 Cal.App.3d at pp. 140-141; *People v. Flowers* (1962) 202 Cal.App.2d 311, 312-313 [20 Cal.Rptr. 778].) Given a choice between one of two counties, there may be a number of factors influencing a prosecutor's decision about venue. A prosecutor may determine that witnesses or the plaintiff have greater connection to one county than the other; that there is some public benefit to be gained by having one district attorney's office as opposed to another prosecute; or that, absent rank forum shopping, there is some appropriate reason to charge the case in the courts of one county as opposed to another. If we assume that an initial decision is made to charge in county A, subsequent developments may indicate that county B is more appropri-

[1] The majority assumes that the dismissal of the conspiracy charges made Calaveras the only available county of venue. The dismissal of the conspiracy charges does not prevent the proof of venue in San Joaquin based on section 782 as to the principal offense. (*People v. Tabucchi* (1976) 64 Cal.App.3d 133 [134 Cal.Rptr. 245].) Moreover, we cannot determine whether dismissals premised on venue problems can be ordered under section 1385 without consideration of circumstances other than those at bar. Accordingly, even if Calaveras were the only county of venue, such fact should not be dispositive of the question presented.

ate. While not the only or the preferable option (see, *infra*), a prosecutor would certainly be justified in moving for a dismissal of the case in county A. The fundamental test for propriety of a dismissal under section 1385 is simply that, "[a]t the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193].) A prosecution motion to dismiss on grounds that a criminal action was commenced in a wrong county is certainly one which provides motivation to a reasonable judge for dismissal.[2]

Other examples are illustrative. A prosecutor at pains to file a complaint within the statutory time limits for a defendant in custody (§ 859) may have some legitimate question whether a case presented for filing is properly filed in his or her home county. Certainly, nothing bars a prosecutor under those circumstances and with a good faith belief in the existence of jurisdiction from filing a complaint in county A and then, upon the discovery of later evidence indicating that venue properly lies in county B, from moving to dismiss the complaint "in furtherance of justice." It may also be the case that a prosecutor is unable to satisfactorily answer the question what county has venue and may, accordingly, move the court for a dismissal because of the absence of sufficient evidence of venue. Such a dismissal for insufficiency of the evidence would clearly be in furtherance of justice and a proper ground for dismissal under section 1385. (*People* v. *Orin, supra,* 13 Cal.3d at p. 946.)

The majority analysis ignores these and other potential circumstances where the question of the county in which to commence or continue prosecution of a criminal action in one county is truly and properly a matter of choice, rather than a stark question of the presence or absence of territorial jurisdiction. Indeed, the allegations of the dismissed San Joaquin County complaint, alleging overt acts in furtherance of a conspiracy occurring in both San Joaquin and Calaveras Counties, demonstrate that these possibilities are more than theoretical. The circumstances here suggest that the majority's conclusion that dismissal for want of territorial jurisdiction is not a matter of choice involving balancing of public interest against defendants' rights is erroneous.

These illustrations also demonstrate that inclusion of a dismissal for absence of proper venue under section 1385 within the bar of section 1387 serves the purposes of section 1387.

The provisions of our modern Penal Code providing for alternative jurisdiction for the trial of criminal offenses were intended to broaden the juris-

---

[2] The implications of such decisions on the appropriate application of the two-dismissal bar section 1387 are discussed, *infra*.

dictional boundaries for the prosecution of criminal offenses beyond their traditional common law limits. (*People* v. *Powell* (1967) 67 Cal.2d 32, 63 [59 Cal.Rptr. 817, 429 P.2d 137].) While recognizing more completely the realities of criminal behavior, such broadened jurisdictional bases also provide opportunities for abuse. Unscrupulous prosecutors could subject a criminal defendant to harassment by the practice of repeated filings in different counties followed by dismissal in cases of apparent concurrent jurisdiction. Under the majority's analysis, a defendant would be deprived of the protection of section 1387 from such abuse. Moreover, section 1387 protects defendants from repeated prosecutions, whether the prosecuting authority is acting improperly, negligently or in good faith. Accordingly, even where successive prosecutions and dismissals are motivated by good faith analyses of the appropriate place for prosecution or by good faith determinations that there is an absence of evidence of venue, the bar of section 1387 to serial prosecutions ought to apply. Protection from repeated filings under such circumstances is as important as it is in cases of dismissals for other, more traditional, reasons under section 1385 or in the other cases to which section 1387 applies. It is also noteworthy that the Legislature has not abided the majority's section 1385 distinction between mandatory and discretionary dismissals in the companion section, 1387. Section 1387 presents the same bar to clearly discretionary dismissals under section 1385 as it does to dimissals which are mandatory, such as those compelled by the time restraints of sections 1381 or 1382 or, for example, those compelled by legal defects determined in section 995 motions. As the majority correctly notes, section 1387 does not distinguish between types of dismissals or whether dismissals constituting a bar to further prosecute were predicated on the merits or on procedural deficiencies in the case. (*Lee* v. *Superior Court* (1983) 142 Cal.App.3d 637, 640 [191 Cal.Rptr. 361].)

The majority also premises its conclusion by suggesting that the defect here was subject to demurrer under section 1004 and thus outside the purview of section 1385. The majority concedes, properly, that no grounds for demurrer appeared on the face of the complaint, a prerequisite to such relief. (§ 1004.) Inexplicably, however, the majority concludes that the complaint was somehow "amended" when the prosecutor informed the court that the offense occurred in another county "and the defect became apparent." (Maj. opn., *ante*, p. 845.) The authority for this conclusion is not apparent, nor is it stated. Had the complaint been amended to allege the commission of the offense in Calaveras County, demurrer would have been appropriate. (§ 1004, subd. 1; *People* v. *Megladdery* (1940) 40 Cal.App.2d 748, 763 [106 P.2d 84], citing *People* v. *More* (1886) 68 Cal. 500, 504 [9 P. 461].) In such a circumstance, dismissal under section 1385 would not have been proper. Had such a demurrer been sustained and had there truly been a lack of jurisdiction in San Joaquin such that amendment of the complaint

could not be had, dismissal under section 1008 would follow, but refiling in Calaveras County would not have been barred by section 1387. No such amendment was made or attempted.

While the majority concludes that a dismissal for lack of territorial jurisdiction is precisely that, and not one in the furtherance of justice (maj. opn., *ante,* p. 845), it gives no indication under what authority, other than section 1385, such a dismissal can he ordered. The venue defect did not appear on the face of the complaint, precluding defendant from attacking it by demurrer. Perhaps the majority is contending that there should not have been a dismissal at all or that the dismissals were improperly entered on whatever basis. Such is not contended, and to do so would give the prosecutor the opportunity to have his cake and eat it too.[3]

Reference to what other options are available also demonstrates that the action of dismissal here should be taken as just that—a dismissal under section 1385. The option to actually amend and suffer a section 1008 dismissal following demurrer is but one of the options available to the prosecutor where a complaint has been filed in the wrong county. Another option, noted by the majority, would have been transfer of the case at an earlier occasion pursuant to section 827.

The authority to transfer a complaint and arrest warrant under section 827 from the county in which a defendant is found to the county of appropriate venue gives a prosecutor the opportunity to have a case transferred without suffering dismissal at an early stage of the criminal proceedings. This procedural device also protects the defendant from extended proceedings in the wrong county.

Alternatively, the prosecution could have procured the filing of charges in Calaveras County *before* again moving for dismissal in San Joaquin. This timing would have avoided completely a "previous" termination and the bar of section 1387. (*People* v. *Cossio* (1977) 76 Cal.App.3d 369 [142 Cal.Rptr. 781].)

A more direct option may also be available. While there does not appear to be specific statutory authority for a pretrial order of transfer of a case from the court of one county to that of another because the action has been filed in the wrong court, other than section 827, the inherent authority to do so likely exists.[4]

---

[3] See footnote 6, *infra.*

[4] *Section 1115 provides authority for the transfer of an action to another court when, during trial, it is determined that the original prosecuting court lacks territorial jurisdiction. Municipal and justice courts have the general authority for such tranfers under section 1462.2.*

Under similar circumstances, the authority to transfer to a more appropriate court has been recognized. (See, e.g., *Griggs* v. *Superior Court* (1976) 16 Cal.3d 341 [128 Cal.Rptr. 223, 546 P.2d 727], concerning transfer of habeas corpus petitions within jurisdiction of superior court.)

Appropriate venue involves a question of territorial jurisdiction, not subject matter jurisdiction or jurisdiction in the more fundamental sense. (*People* v. *Tabucchi, supra,* 64 Cal.App.3d at p. 141; Witkin, Cal. Criminal Procedure (1963) Jurisdiction and Venue, § 64, pp. 62-63.) Accordingly, as in *Griggs, supra,* a court with subject matter jurisdiction has the inherent authority to transfer to an equivalent court without dismissal of the cause.[5]

A transfer, as opposed to a dismissal, avoids any number of practical problems. These might include problems of the defendant's custody status (see § 1388), credits for time served, problems concerning calculation of statutes of limitations and the like. Such difficulties could easily be avoided by motion for transfer to a court of appropriate subject matter and territorial jurisdiction. Where the parties could have requested and the court taken an action other than a dismissal for lack of territorial jurisdiction, the choice to dismiss can only be interpreted as one in the furtherance of justice.

The failure of the prosecution to pursue anything other than a motion to dismiss the proceedings in San Joaquin County should not be visited upon the defendant. The majority is willing to acknowledge the carelessness with which the prosecutor proceeded, but fails to appreciate that the effects on a hapless defendant are exactly those which section 1387 was intended to avoid.[6] I would grant the writ as prayed.

---

[5] Of course, the authority to transfer a case from one county to another to avoid problems of the defendant receiving a fair trial is expressly recognized by statute. (§ 1033.)

[6] Having twice moved to dismiss the complaint against petitioner, a strong argument could also be made that the People should be estopped from challenging the result of such dismissal. (See, e.g., *In re Griffin* (1967) 67 Cal.2d 343, 347 [62 Cal.Rptr. 1, 431 P.2d 625]).